## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CUMBERLAND TRUCK EQUIPMENT CO., et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DETROIT DIESEL CORPORATION, et al., | : | No. 05-616 |
| Defendants. | : | |
| | : | |
| DIAMOND INTERNATIONAL TRUCKS, INC., et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DETROIT DIESEL CORPORATION, et al., | : | No. 05-625 |
| Defendants. | : | |

## MEMORANDUM AND ORDER

Schiller, J.                                                            November 14, 2005

These cases arise out of alleged antitrust violations by Defendants, Detroit Diesel Corporation ("DDC") and its distributors. DDC manufactures truck engines and has its principal place of business in Detroit, Michigan. DDC's distributors, who are authorized to sell DDC parts and perform maintenance on DDC engines, are located throughout the country. Plaintiffs brought these class actions under Section 1 of the Sherman Act and they allege conspiracy, price fixing and group boycott undertaken by Defendants. Plaintiffs in *Cumberland Truck Equipment Co. v. Detroit Diesel Corporation*, Civ. A. No. 05-616, represent truck dealers who Defendants terminated or did not renew as DDC dealers. Plaintiffs in *Diamond International Trucks, Inc. v. Detroit Diesel Corporation*, Civ. A. No. 05-625, represent truck dealers who Defendants downgraded in DDC dealer classification to truck maintenance dealer. Plaintiffs aver they have suffered significant injury

as a result of Defendants' conspiratorial actions.  Presently before the Court are motions to dismiss submitted by seven of the twenty Defendants, arguing that the Court lacks personal jurisdiction over Defendants and that venue is improper in this District.  The Court finds that venue is improper in this District and in the interests of justice transfers these cases to the Eastern District of Michigan.

## I.     BACKGROUND

The following facts are set forth in the light most favorable to Plaintiffs.[1]  Defendant DDC designs and manufactures truck engines.  (Cumberland Am. Compl. ¶ 42.)  DDC markets these engines through region-specific agreements with distributors.  (*Id.* ¶¶ 44-45.)  Within each region, each distributor enters into agreements with truck dealers.  (*Id.* ¶ 46.)  In addition to selling trucks with DDC engines, dealers perform warranty service and other repairs on DDC engines.  (*Id.*)  There are two types of truck dealers: (1) overhaul dealers that perform warranty repairs and major overhaul work; and (2) maintenance dealers that perform minor service and maintenance repairs.  (*Id.* ¶ 47.)

The truck dealers also sell trucks manufactured by International Truck and Engine Corporation ("International") and Volvo Trucks, Inc. ("Volvo").  (*Id.* ¶ 48.) International and Volvo compete with Freightliner LLC ("Freightliner"), Western Star Trucks ("Western Star"), and Sterling Trucks ("Sterling"), which are all owned by DaimlerChrysler AG.  (*Id.* ¶¶ 52-53.)  In October of 2000, DaimlerChrysler acquired DDC.  (*Id.* ¶ 52.)  After the acquisition, DaimlerChrysler began providing Freightliner, Western Star, and Sterling pricing and products that it did not make available to unaffiliated truck manufacturers such as International and Volvo.  (*Id.*)  As a result, International

---

[1] The factual allegations presented by Plaintiffs in their Amended Complaints for these two actions are virtually identical.  Thus, the Court refers primarily to the Cumberland Amended Complaint, except where the Diamond Amended Complaint contains relevant distinctions.

and Volvo refused to install DDC engines.  (*Id.* ¶ 53.)

In retaliation for this decision by International and Volvo – over which Plaintiffs had no control – DDC and the distributors entered into a two-part conspiracy.  (*Id.* ¶¶ 54-56.)  First, DDC and the distributors agreed to terminate or not renew a group of dealers.  (*Id.* ¶¶ 56-57.)  These dealers were no longer authorized to perform any warranty repairs on DDC engines.  (*Id.* ¶ 57.)  Another group of dealers remained as DDC dealers, but were reclassified from "overhaul" or "maintenance" dealers to "truck maintenance" dealers, who are only permitted to perform maintenance repairs on engines installed in trucks sold by their dealerships.  (*Id.* at ¶ 58.)

Second, DDC and the distributors agreed to raise the prices the distributors charged for DDC engine parts in an effort to eliminate competition between dealers who sold International and Volvo trucks and those who sold Freightliner, Western Star, and Sterling trucks.  (*Id.* ¶ 55.)  As part of the price-fixing conspiracy, DDC and the distributors agreed not only to stop offering "dealer discounts" on DDC parts to dealers who sold International and Volvo trucks, but also to raise substantially the prices charged to these dealers. (*Id.* ¶ 56.)  As a result of this agreement between DDC and the distributors, as well as DDC's coercive tactics to ensure that distributors complied with the agreement, dealers who refused to stop selling International and Volvo trucks were charged significantly more for DDC parts than competing Freightliner, Western Star or Sterling dealers.  (*Id.* ¶¶ 66, 68-69.)

On February 9, 2005, Plaintiffs filed Amended Complaints against DDC and the distributors alleging price fixing and a group boycott in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  (*Id.* ¶ 1; Diamond Am. Compl. ¶ 1.)  One complaint was filed on behalf of truck dealers whose DDC dealer classification was changed to truck maintenance dealer.  (Diamond Am. Compl. ¶ 30.)

3

The other complaint was brought on behalf of truck dealers who were terminated or not renewed as DDC dealers after February 1, 2001.  (Cumberland Am. Compl. ¶ 32.)

Plaintiffs assert that the Court has personal jurisdiction over Defendants under 15 U.S.C. § 22 and that venue is proper is this District pursuant to 15 U.S.C. § 15, 15 U.S.C. § 22, and 28 U.S.C. § 1391.  (*Id.* ¶¶ 29-30.)  Seven defendants have filed motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Three of these defendants have also moved to dismiss for improper venue under 12(b)(3).

## II.    STANDARD OF REVIEW

Defendant has the burden of raising the defense of lack of personal jurisdiction.  *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  After defendant has raised this defense, the burden shifts to plaintiff to demonstrate facts that establish personal jurisdiction. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).  In contrast, defendant has the burden of showing that venue is improper.  *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). When reviewing a motion to dismiss for lack of personal jurisdiction or improper venue, a court must accept the plaintiff's allegations as true and must draw all reasonable inferences and resolve all factual disputes in the plaintiff's favor.  *See Pinker,* 292 F.3d at 368 (*citing Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)); *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005) (*citing Myers*, 695 F.2d at 724).

4

### III.    DISCUSSION

Plaintiffs predicate personal jurisdiction and venue on Section 12 of the Clayton Act, which states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (2005).  Section 12 contains a special venue clause for corporate antitrust defendants, as well as a clause providing for nationwide service of process for corporate antitrust defendants. Enacted in 1914, Section 12 was intended to remedy the restrictive personal jurisdiction and venue provisions of the Sherman Antitrust Act, which had previously made it difficult to sue multiple defendants in a single venue.  *See United States v. Nat'l City Lines*, 334 U.S. 573, 582 (1948).

Plaintiffs assert personal jurisdiction over Defendants pursuant to Section 12's nationwide service of process clause.  (Cumberland Am. Compl. ¶ 29.)  Plaintiffs allege that venue is proper under the general venue statutes supplementing Section 12's special venue clause.  (Pls.' Consol. Resp. at 16.); *see also* 28 U.S.C. § 1391(b) (2005).  Defendants contest the availability of Section 12 service of process because they argue that Plaintiffs cannot establish venue under Section 12. (Clarke Mot. to Dismiss at 1.)  In the alternative, Defendants claim that even if Plaintiffs can avail themselves of Section 12's nationwide service of process, they must also have minimum contacts with Pennsylvania to comport with Fifth Amendment due process standards.  (*Id.* at 13.)  Defendants contend that such minimum contacts are lacking.  (*Id.*)

The Third Circuit has examined the contours of Section 12, albeit in the context of an antitrust suit against alien, rather than domestic, corporations.  *See In re: Automotive Refinishing*

*Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004). The Third Circuit held that foreign corporations may be served pursuant to Section 12 without first satisfying Section 12's venue clause because the service and venue clauses were "independent." *Id.* at 297. Moreover, in determining whether personal jurisdiction existed, the court held that minimum contacts are judged based on defendants' aggregate national contacts, not their local contacts. *Id.* Finally, the court found that, given the unique nature and position of the general alien venue statute, a plaintiff could establish venue pursuant to 28 U.S.C. § 1391(d), instead of relying solely upon Section 12's venue clause. *Id.* at 293, 296.

      **A.**    **Venue**

           *1.*    *Deciding Venue as a Threshold Inquiry*

Courts generally consider the question of personal jurisdiction before addressing the issue of proper venue. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("The question of personal jurisdiction, which goes to the court's power to exercise control over parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."); *see also Madotto v. Rosman*, Civ. A. No. 98-3221, 1998 WL 961390, at *2 (E.D. Pa. Dec. 10, 1998). A court may, however, first analyze the question of venue when "the resolution of the venue issue 'resolves' the case before [the] Court." *Lomanno v. Black*, 285 F. Supp. 2d 637, 640 (E.D. Pa. 2003) (*quoting Leech v. First Commodity Corp. of Boston*, 553 F. Supp. 688, 689 (W.D. Pa. 1982)); *see also Wojtunik v. Kealy*, Civ. A. No. 02-8410, 2003 WL 22006240, at *2 (E.D. Pa. Aug. 26, 2003) (holding that courts may begin with the venue analysis when a sound justification exists to do so). Indeed, when "defendants have challenged a court's power over their persons and, at the same time, have moved alternatively for transfer, the interests of judicial economy are best served by initial

address of the transfer issue." *Lomanno*, 285 F. Supp. 2d at 640 (*quoting Teleprompter Corp. v. Polinsky*, 447 F. Supp. 53, 54-55 (S.D.N.Y. 1977)).  Furthermore, a court has the power to transfer a case pursuant to venue transfer statutes without possessing personal jurisdiction over the defendants.[2]  *See Goldlawr, Inc., v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); *United States v. Berkowitz*, 328 F. 2d 358, 361 (3d Cir. 1964) (extending *Goldlawr* rationale to venue transfers under § 1404(a)).

As determination of the venue issue will resolve this case, the Court first addresses the propriety of venue in this District.  Resolution of the venue issue obviates the need for the Court to assess Defendants' challenge to personal jurisdiction.

> ### 2.        *Standards for Analyzing Venue*

The issue of which statutes govern proper venue in antitrust cases against corporate defendants is hotly contested not only by the parties, but also by federal courts throughout the country.  Courts have adopted three distinct approaches for assessing proper venue when a plaintiff asserts personal jurisdiction pursuant to Section 12.  First, some courts suggest that a plaintiff suing a domestic defendant for antitrust violations must use the Section 12 venue clause exclusively, but allow a plaintiff suing an alien defendant to use the general alien venue statute, 28 U.S.C. § 1391(d),

---

[2] Section 1406 states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a) (2005).
    Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (2005).

to supplement the Section 12 venue clause.[3]  *See, e.g.*, *In re Automotive Refinishing*, Civ. A. No. MDL-1426, 2002 WL 31261330, at *9 (E.D. Pa. July 31, 2002), *aff'd* 358 F.3d 288 (3d Cir. 2004); *Gen. Elec. Co. v. Bucyrus-Erie Co.*, 550 F. Supp. 1037, 1040 (S.D.N.Y. 1982).  A second set of courts allow plaintiffs to establish venue under Section 12 or an alternative general venue source interchangeably.  *See, e.g.*, *New York v. Morton Salt Co.*, 266 F. Supp. 570, 574-75 (E.D. Pa. 1967); *Phila. Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 291 F. Supp. 252, 255 (E.D. Pa. 1968).  Finally, other courts find that the Section 12 venue clause is the exclusive venue provision for all defendants, alien and domestic, and it preempts the general venue statutes.  *See, e.g.*, *GTE New Media Servs. Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000); *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 532 (N.D. Tex. 2001).

> i.  *Supplementing Section 12 Only for Alien Corporations*

The Third Circuit's decision in *Automotive Refinishing* suggests that this Circuit would adopt the first approach, allowing Section 12's venue clause to be supplemented for alien but not domestic defendants.  Under this approach, Section 1391(d) may supplement the special venue requirements of Section 12 for alien corporations not because Section 12 may be supplemented by any general venue statute, but rather because Section 1391(d) reflects a unique tradition in United States jurisdictional jurisprudence.[4]  *See Automotive Refinishing*, 358 F.3d at 296.  This reading of

---

[3] Section 1391(d) states in its entirety: "An alien may be sued in any district."  28 U.S.C. § 1391(d) (2005).

[4] The Third Circuit adopted the Supreme Court's emphasis, in *Brunette Machine Works Ltd. v. Kockum Indus. Inc.*, 406 U.S. 706 (1972), on the unique nature of Section 1391(d):

> Section 1391(d) is not like other general venue provisions.  *Brunette* held that Section 1391(d) is not derived from the general venue statutes that a special venue provision might otherwise be read as intended to replace.  Rather, Section 1391(d)

*Automotive Refinishing* is supported by the district court's interpretation of a Ninth Circuit case, *Go-Video, Inc. v. Akai Electric Co.*, 855 F.2d 1406 (9th Cir. 1989), on which the Third Circuit relied heavily in deciding *Automotive Refinishing*:

> The broad grant of venue under [Section 1391(d)] is inapplicable to domestic corporations.  The holding of *Go-Video* permits a plaintiff to sue only an alien corporation in any district; nothing in *Go-Video* permits a domestic corporation to be sued in any district.  Rather, a domestic corporation could only be sued[ ] according to Section 12 . . . .

*Automotive Refinishing*, 2002 WL 31261330, at *9 (citation omitted).  *See also In re Magnetic Audiotape Antitrust Litig. v. BASF AG*, 171 F. Supp. 2d 179, 185 (S.D.N.Y. 2001) (relying on *Brunette* in deciding that Section 1391(d) is unique and that it supplements Section 12 venue); *Bucyrus-Erie*, 550 F. Supp. at 1040 (holding that Section 1391(d) supplements Section 12 venue, in part "because section 1391(d) is not like other general venue provisions").  Indeed, in *Automotive Refinishing* the Third Circuit emphasized the importance of distinguishing between out-of-state and foreign corporate antitrust defendants.  *Automotive Refinishing*, 358 F.3d at 296 n.10.

The Supreme Court has addressed the exclusivity of Section 12's venue statute in *Brunette*, 406 U.S. 706, and *Pure Oil Co. v. Suarez*, 384 U.S. 202 (1966).  Both cases have limited holdings that support the proposition that only Section 1391(d) may supplement specific venue statutes.

---

> derives from a tradition going back to the beginning of the Republic under which suits against aliens were left unrestricted, and could be tried in any district, subject only to the requirement of service of process.  The *Brunette* court interpreted § 1391(d) to state a principle of broad and overriding application which prevented an alien defendant from using a narrower venue provision in another statute as a shield against suit.  Absent some express congressional intent to the contrary, a special venue provision should not, under the clear language of *Brunette* be deemed exclusively controlling when the defendant involved is an alien.  The principle that an alien may be sued in any district is simply too deeply rooted to assume otherwise.

*Automotive Refinishing*, 358 F.3d at 296 (internal quotations and citations omitted).

*Brunette*, 406 U.S. at 714; *Pure Oil*, 384 U.S. at 206.  At issue in *Brunette* was the appropriate venue statute for patent infringement cases.  *Brunette*, 406 U.S. at 706-07.  Rather than supporting the proposition that general venue statutes always supplement specific venue clauses, *Brunette* simply held that specific venue statutes do not displace Section 1391(d).  *Id.* at 713.  Similarly, although Plaintiffs cite *Pure Oil* for the proposition that Section 1391(c) can supplement specific venue statutes (Pls.' Consol. Resp. at 17), *Pure Oil*'s holding is much more restrictive:  "[T]he liberalizing purpose underlying [Section 1391(c)'s] enactment and the generality of its language support the view that it applies to all venue statutes using residence as a criterion . . . ." *Pure Oil*, 384 U.S. at 204-05. In *Pure Oil*, the Supreme Court reviewed a negligence action brought under the Jones Act and held that the plaintiff could establish venue under Section 1391(c), which defines corporate residence, rather than the special venue provision of the Jones Act.  *Id.* at 207.  The Court did not hold, however, that Section 1391(c) could serve as an alternative venue source to all special venue statutes. Instead, *Pure Oil*'s holding only permits Section 1391(c) to supplement special venue statutes that include "residence" as an element.  *Id.* at 205.

### ii.    Supplementing Section 12 for All Corporations

Taking the second of the three approaches to assessing venue, Plaintiffs suggest that Section 12's venue provision may be supplemented by any venue statute.  Plaintiffs urge the Court to find that venue is proper in any district in the United States pursuant to Sections 1391(b)(1) and (c) because Section 12 allows for nationwide service of process.[5]  (Pls.' Consol. Resp. at 21-22.)

---

[5] Section 1391(c) states: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).

Section 1391(b)(1) states: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a

Plaintiffs argue that Defendant corporations "reside" in this District under Section 1391(c) based on the Court's personal jurisdiction pursuant to Section 12's nationwide service of process, and therefore venue is proper here under Section 1391(b)(1).  (*Id.* at 22.)  Numerous courts have rejected this argument.  *See King v. Johnson Wax Assocs., Inc.*, 565 F. Supp. 711, 714 (D. Md. 1983) (While Congress intended to expand venue options in antitrust cases, "section 12 was not intended to provide a forum-shopping plaintiff with an unfettered choice of venue."); *see also Mgmt. Insights*, 194 F. Supp. 2d at 532 (Allowing Section 1391(c) to supplement venue where there is nationwide personal jurisdiction "completely eviscerates any semblance of a venue inquiry in antitrust cases involving corporate defendants – a result this Court finds Congress could not have intended.").

Moreover, courts that do permit Section 12 to co-exist with, rather than supplant, the general venue statutes rely heavily on the stated purpose of Section 12, which is to expand venue options. *See, e.g.*, *Morton Salt*, 266 F. Supp. at 574-75.  Courts in this District have interpreted the "philosophy underlying the *Pure Oil* decision" to mean that "when Congress has enacted a liberal special venue statute[ ] enlarging venue (as in the Clayton Act § 12) the general venue provisions are available to supplement the special venue provisions, absent a manifestation by the Congress of a contrary restrictive intent." *School Dist. of Phila. v. Harper & Row Publishers*, 267 F. Supp. 1006, 1009 (E.D. Pa. 1967); *see also Am. Radiator & Standard Sanitary Corp.*, 291 F. Supp. at 255 ("Venue in private antitrust actions against corporate defendants is governed by the special venue provision of Section 12 of the Clayton Act, as supplemented by 28 U.S.C.A. § 1391(c) [ ] of the general venue statute.") (citation omitted); *Morton Salt*, 266 F. Supp. at 574-75 (stating that even

---

judicial district where any defendant resides, if all defendants reside in the same State . . . . "  28 U.S.C. § 1391(b)(1).

though Section 12 lacks a "resident" element, Section 12's "inhabitant" standard permits expansion under *Pure Oil* because Congress enacted Section 12 to expand venue).

Importantly, changes made in 1988 to the text of Section 1391(c) call into question whether these pre-1988 cases remain viable. Prior to 1988, the text of Section 1391(c) read: "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." 28 U.S.C. § 1391(c) (1964) (*quoted in Pure Oil*, 384 U.S. at 204). At that time, courts were not confronted with the potential for unlimited personal jurisdiction and venue for domestic corporations in antitrust cases because Section 12 offered plaintiffs *broader* venue options than Section 1391(c). *See Bucyrus-Erie*, 550 F. Supp. at 1041 n.5. However, the revised Section 1391(c), which makes a corporation a resident of "any judicial district in which [defendant corporation] is subject to personal jurisdiction at the time the action is commenced," creates the alarming possibility of unlimited venue for antitrust actions against domestic corporations. *See* 28 U.S.C. § 1391(c).

Nevertheless, at least two post-1988 revision cases have accepted Plaintiffs' interpretation of Section 12 and allow personal jurisdiction and venue over domestic corporations in any district in the country. *See Icon Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 376 (W.D. La. 1996); *Kingsepp v. Wesleyan Univ.*, 763 F. Supp. 22, 28 (S.D.N.Y. 1991) ("[Defendants] are corporations who are, and were at the time this action was commenced, subject to jurisdiction in this action under section 12 of the Clayton Act. They are therefore deemed to 'reside' in this district pursuant to section 1391(c)."). Reading *Go-Video* and *Pure Oil* expansively, the *Icon* court relied on "the well established rule that special venue statutes ordinarily do not preempt general venue rules in the absence of some indication that Congress intended the special rules to be exclusive." *Icon*, 921 F.

12

Supp. at 379.  Moreover, despite Section 1391(d)'s admittedly unique status, the court declined to interpret *Go-Video* as holding that "[Section] 1391(d) is the *only* statutory rule of venue that supplements the venue rules provided by Section 12." *Id.* at 380.  The court found that it was Congress's prerogative to make the Section 12 venue requirements redundant by amending Section 1391(c) and that Congress could have avoided this result by providing that "§ 1391(c), as amended, did not apply to antitrust actions." *Id.* at 383.  Although the court recognized that permitting Sections 1391(b)(1) and (c) to supplement Section 12's venue provision would lead to unlimited venue against domestic corporations, it reasoned that the supposed unfairness that results "is a policy issue best settled in the legislative arena." *Id.* at 376, 383; *see also Kingsepp*, 763 F. Supp. at 28 ("[Defendants] are corporations who are, and were at the time this action was commenced, subject to jurisdiction in this action under section 12 of the Clayton Act.  They are therefore deemed to 'reside' in this district pursuant to section 1391(c).").

### iii.        *Using Section 12 Exclusively*

Finally, some courts hold that Section 12 is exclusive and preempts all general venue statutes. These courts reason that Congress would not have included a specific venue clause only to have it overridden by the general venue statute. *See, e.g.*, *GTE*, 199 F.3d at 1351.  In *GTE*, the D.C. Circuit stated that "it seems quite unreasonable to presume that Congress would intentionally craft a two-pronged provision with a superfluous first clause, ostensibly link the two provisions with the 'in such cases' language, but nonetheless fail to indicate clearly anywhere that it intended the first clause to be disposable." *Id.*  Thus, the *GTE* court found that venue in antitrust cases could only be established pursuant to Section 12's venue provision. *Id.*  Similarly, the district court in *Management Insights* required plaintiffs to establish venue under Section 12 because the

consequence of allowing Sections 1391(b)(1) and (c) to supplement was unreasonable. *Mgmt. Insights*, 194 F. Supp. 2d at 532. This preemption approach has obviously been rejected by the Third Circuit, as evidenced by its support in *Automotive Refinishing* of supplementing Section 12's venue provision with Section 1391(d) in the case of alien corporations. *See Automotive Refinishing*, 358 F.3d at 296.

*iv.*     *Applicable Venue Standard in this Case*

The Court finds that the first approach, supplementing Section 12 venue only for alien corporations, is most consistent with the law in this Circuit. The Third Circuit has emphasized the "crucial" distinction between alien and domestic corporations, and by adopting this approach the Court recognizes and maintains this distinction. *See Automotive Refinishing*, 358 F.3d at 296 n.10. Moreover, the weight of authority convinces the Court that Plaintiffs should not be allowed to assert unlimited personal jurisdiction and venue over corporate antitrust defendants in any district court in the United States, as permitted under the second approach. While this Circuit has rejected the *GTE* court's conclusion that plaintiffs must always satisfy the venue clause of Section 12 before utilizing the service of process clause, some limitation must be placed on plaintiffs' choice of venue when personal jurisdiction is based solely on nationwide service of process. Requiring Plaintiffs to establish venue for domestic corporate Defendants exclusively under Section 12 preserves the Third Circuit's alien-domestic distinction while reflecting a coherent interpretation of antitrust precedent. Here, as Defendants are domestic corporations asserting personal jurisdiction based solely on Section 12's nationwide service of process clause, venue must be established pursuant to Section 12.

14

3.      *Transfer for Improper Venue*

i.      *Improper Venue Under Section 12*

The venue provision of Section 12 states: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business . . . ."  15 U.S.C. § 22. Inhabitant means "incorporated under the laws of that jurisdiction."  *Automotive Refinishing*, 358 F.3d at 293 n.6 (*quoting Bucyrus-Erie*, 550 F. Supp. at 1041 n.5).  "Being 'found' in a district is generally equated with 'doing business' there, and  requires greater contacts than does 'transacting business.'"  *Id.*   Corporations are found "where [they have] 'presence' and 'continuous local activities' in the district."  *Id.*

None of the moving Defendants are incorporated in Pennsylvania, thus they do not qualify as "inhabitants" of this District.  (Cumberland Amend. Compl. ¶¶ 12, 16, 19, 20, 22, 26, 27.)  Nor do Plaintiffs allege that any of the moving Defendants have a presence in this District, engage in continuous local activities in this District sufficient to be "found" here, or even "transact business" in this District.  Indeed, Defendants assert in their motions that they have no contacts whatsoever with this District.  (Clarke Mot. to Dismiss at 7-8; United Engines Mot. to Dismiss ¶¶ 8, 12; Smith Mot. to Dismiss at 2-3; Interstate Mot. to Dismiss at 2-3.)  Thus, as Defendants have met their burden by showing that venue is improper in this District based on Section 12's venue provision, these cases must be dismissed or transferred based on improper venue.

ii.      *Transfer Under § 1406*

Pursuant to 28 U.S.C. § 1406, a court faced with "a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or

division in which it could have been brought." 28 U.S.C. 1406(a) (2005). Since venue is improper in this District, the Court must either dismiss as to moving Defendants or transfer these cases to a district where venue would be proper. As DDC maintains headquarters in Detroit, Michigan, and the moving Defendants transacted business with DDC while acting as DDC's distributors, proper venue lies in the Eastern District of Michigan. (*See* Cumberland Amend. Compl. ¶¶ 8, 44.) Indeed, Defendants note that venue would be proper against all Defendants in the Eastern District of Michigan, "where Detroit Diesel Corporation is headquartered and the averred substantial events giving rise to the alleged conspiracy are supposed to have taken place." (Clarke Mot. to Dismiss at 12-13; *see also* Interstate Mot. to Dismiss at 9-10.) Because dismissal for improper venue may raise statute of limitations issues for Plaintiffs and because proper venue for these actions exists in a single alternative forum, the Court finds that transfer is in the interests of justice and judicial economy. *See, e.g.*, *Ward v. Hampton Psychiatric Hosp.*, Civ. A. No. 92-4392, 1993 WL 419143, at *2 (E.D. Pa. Oct. 19, 1993) (transferring case in the interests of justice and citing avoidance of potential statute of limitations problems and the trend in this Circuit for transfer rather than dismissal for improper venue); *Scott Paper Co. v. Nice-Pak Prods., Inc.*, 678 F. Supp. 1086, 1090-91 (D. Del. 1988) (transferring case in the interests of justice and noting prevention of harsh penalty to plaintiffs and likelihood of convenient and expeditious resolution of dispute in alternate forum). Thus, the Court transfers these actions to the Eastern District of Michigan.

### B. "Non-Corporate" Defendants

Three Defendants argue that they are not subject to Section 12's provisions because they are not "corporations" within the meaning of the Clayton Act. (Pacific Power Prods. Mot. to Dismiss at 2-3.) Plaintiffs initially included Pacific Detroit Diesel-Allison Company as a defendant, but

Plaintiffs' Amended Complaints named Pacific Power Products Company ("PPP") (f/k/a Pacific Detroit Diesel-Allison) and its two general partners, NMT Diesel, Inc. ("NMT") and TDS, Inc. ("TDS").  (PPP Mot. to Dismiss at 2-3.)  PPP is a general partnership, and NMT and TDS, while technically corporations, have been sued in their capacity as partners of the PPP general partnership. (Cumberland Amend. Compl. ¶¶ 26, 27; PPP Mot. to Dismiss at 2-3, 7-8; NMT Mot. to Dismiss at 7; TDS Mot. to Dismiss at 7.)  These Defendants ("PPP Defendants") point to case law which supports a strict construction of "corporation" under Section 12.  *See, e.g.*, *World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 661, 664 (S.D.N.Y. 2005).  Accordingly, they challenge the Court's exercise of personal jurisdiction over them based on Section 12's nationwide service of process provision.

The Court need not decide the jurisdictional issue raised by the PPP Defendants, as the interests of judicial economy are best served by transferring these cases in their entirety to the Eastern District of Michigan.  As noted above, *see supra* Part III.A.1, the Court may transfer pursuant to Sections 1406 and 1404 for improper or inconvenient venue, even if the Court lacks personal jurisdiction over the PPP Defendants.  The Court is confident that transferring these cases to a forum with proper venue is a necessary first step in the resolution of this action.  Thus, in furtherance of the interests of justice, the Court denies as moot the PPP Defendants' motions to dismiss for lack of personal jurisdiction and transfers these cases to the Eastern District of Michigan.

**IV.    CONCLUSION**

For the foregoing reasons, the Court finds that venue is improper in this District and in the interests of justice transfers the above-captioned cases to the Eastern District of Michigan. Accordingly, Defendants' motions to dismiss for improper venue are granted, and Defendants' motions to dismiss for lack of personal jurisdiction are denied as moot.  Appropriate Orders follow.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CUMBERLAND TRUCK** | : | |
| **EQUIPMENT CO., et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DETROIT DIESEL CORPORATION, et al.,** | : | **No. 05-616** |
| **Defendants.** | : | |

**ORDER**

**AND NOW**, this **14ᵗʰ** day of **November**, **2005**, upon consideration of Defendants' motions to dismiss, Plaintiffs' responses thereto, Defendants' replies thereon, and for the foregoing reasons, it is hereby **ORDERED** that:

1.   The Motion to Dismiss of Defendant Clarke Power Services, Inc., f/k/a Clarke Detroit Diesel-Allison, Inc. (Document No. 36) is **GRANTED in part** and **DENIED in part**, as follows:

    a.   Defendant's motion to dismiss for improper venue is **GRANTED**;

    b.   Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED as moot**.

2.   The Motions to Dismiss of Defendant Pacific Detroit Diesel-Allison Company (Document No. 54) and Pacific Power Products Company (Document No. 78) are **DENIED as moot**.

3.   The Motion to Dismiss of Defendant United Engines, L.L.C. (Document No. 42) is **GRANTED in part** and **DENIED in part**, as follows:

    a.   Defendant's motion to dismiss for improper venue is **GRANTED**;

       b.      Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED as moot**.

4.      The Motion to Dismiss of Defendant Smith Detroit Diesel-Allison, Inc. (Document No. 45) is **DENIED as moot**.

5.      The Motion to Dismiss of Defendant Interstate Power Systems, Inc., f/k/a Interstate Detroit Diesel, Inc. (Document No. 58) is **GRANTED in part** and **DENIED in part**, as follows:

       a.      Defendant's motion to dismiss for improper venue is **GRANTED**;

       b.      Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED as moot**.

6.      The Motion to Dismiss of Defendant NMT Diesel, Inc. (Document No. 80) is **DENIED as moot**.

7.      The Motion to Dismiss of Defendant TDS Diesel, Inc. (Document No. 79) is **DENIED as moot**.

8.      This case is **TRANSFERRED** to the Eastern District of Michigan.

9.      The Clerk of Court is directed to close this case.

**BY THE COURT:**

**Berle M. Schiller, J.**

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DIAMOND INTERNATIONAL** | : | |
| **TRUCKS, INC., et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DETROIT DIESEL CORPORATION, et al.,** | : | **No. 05-625** |
| **Defendants.** | : | |

## ORDER

**AND NOW**, this **14th** day of **November**, **2005**, upon consideration of Defendants' motions to dismiss, Plaintiffs' responses thereto, Defendants' replies thereon, and for the foregoing reasons, it is hereby **ORDERED** that:

1.  The Motion to Dismiss of Defendant Clarke Power Services, Inc., f/k/a Clarke Detroit Diesel-Allison, Inc. (Document No. 35) is **GRANTED in part** and **DENIED in part**, as follows:

    a.  Defendant's motion to dismiss for improper venue is **GRANTED**;

    b.  Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED as moot**.

2.  The Motions to Dismiss of Defendant Pacific Detroit Diesel-Allison Company (Document No. 53) and Pacific Power Products Company (Document No. 79) are **DENIED as moot**.

3.  The Motion to Dismiss of Defendant United Engines, L.L.C. (Document No. 40) is **GRANTED in part** and **DENIED in part**, as follows:

    a.  Defendant's motion to dismiss for improper venue is **GRANTED**;

      b.      Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED as moot**.

4.      The Motion to Dismiss of Defendant Smith Detroit Diesel-Allison, Inc. (Document No. 43) is **DENIED as moot**.

5.      The Motion to Dismiss of Defendant Interstate Power Systems, Inc., f/k/a Interstate Detroit Diesel, Inc. (Document No. 57) is **GRANTED in part** and **DENIED in part**, as follows:

      a.      Defendant's motion to dismiss for improper venue is **GRANTED**;

      b.      Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED as moot**.

6.      The Motion to Dismiss of Defendant NMT Diesel, Inc. (Document No. 77) is **DENIED as moot**.

7.      The Motion to Dismiss of Defendant TDS Diesel, Inc. (Document No. 78) is **DENIED as moot**.

8.      This case is **TRANSFERRED** to the Eastern District of Michigan.

9.      The Clerk of Court is directed to close this case.

BY THE COURT:

**Berle M. Schiller, J.**